**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN S. RIZZO, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| PPL SERVICE CORPORATION, | : | |
| Defendant | : | NO. 03-5779 |
| _____ | : | |
| GREGORY GORSKY, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| PPL SERVICE CORPORATION, | : | |
| Defendant | : | NO. 03-5780 |
| _____ | : | |
| KIM GORSKY, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| PPL SERVICE CORPORATION, | : | |
| Defendant | : | NO. 03-5781 |

**M E M O R A N D U M**

Gene E.K. Pratter, J.                                         April 19, 2005

Before the Court is Defendant PPL Service Corporation's ("PPL") Motion for Summary Judgment filed on December 17, 2004. This Motion applies to all of the above captioned matters inasmuch as all three of the cases arise from the same basic facts. Plaintiffs John S. Rizzo, Gregory Gorsky, and Kim Gorsky (collectively "Plaintiffs") filed separate complaints in the Court of Common Pleas Lehigh County on or about September 24, 2003. PPL removed these matters to this Court on October 17, 2003. In their complaints, Plaintiffs allege that they were

discriminated against by their employer, PPL, based on their respective ages.

PPL asserts in its Motion for Summary Judgment that Ms. Gorsky's counts fail as a matter of law because there is no evidence that Ms. Gorsky suffered an adverse employment action, which is required in order for a plaintiff to establish a prima facie case. PPL further argues that all of the Plaintiffs' claims fail as a matter of law because there is no record evidence demonstrating that PPL's disciplinary actions against each of the Plaintiffs gives rise to an inference of discrimination, another requirement to establish a prima facie case. Finally, even if Plaintiffs could establish prima facie cases, PPL contends that it has articulated legitimate, non-discriminatory reasons for terminating Mr. Rizzo and Mr. Gorsky and for issuing a written warning to Ms. Gorsky and Plaintiffs have failed to produce any evidence that PPL's reasons for the discipline of the Plaintiffs were pretexts for unlawful age discrimination.

The Court finds that Ms. Gorsky has failed to produce record evidence of an adverse employment action. The Court also finds that Mr. Rizzo and Mr. Gorsky have failed to show that the non-discriminatory reasons articulated by PPL were a pretext for unlawful age discrimination. Therefore, the Court grants summary judgment for PPL in all of the listed matters and these cases are dismissed.

## I.    **BACKGROUND**

On or about September 24, 2003, Plaintiffs filed individual complaints in the Court of Common Pleas of Lehigh County naming PPL Susquehanna, LLC ("PPL") as Defendant. Count I of each of these Complaints alleges violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*; Count II of each of these Complaints alleges violations of the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. §§ 950, *et*

*seq.* These matters were removed by PPL to this Court, which has jurisdiction pursuant to 28 U.S.C. § 1331, because the matters involve a claim arising from federal law. The Court has jurisdiction of the state law claim in each case pursuant to 28 U.S.C. § 1367, because the state law claims arise from the same occurrence and events as the federal law claims.

Gregory Gorsky was employed by PPL from 1973 to 2001. In 2001, he was employed as a designer-drafter at PPL's nuclear facility in Berwick, Pennsylvania. (GG Tr. 10-13).[1] Kim Gorsky was employed by PPL from 1984 to 2003, and, in 2001, was employed as a senior drafter at PPL's nuclear facility in Berwick, Pennsylvania. (KG Tr. 14-15). John Rizzo was employed by PPL from 1979 to 2001, and, when terminated, was employed as a senior engineer at PPL's nuclear facility in Berwick, Pennsylvania. (JR Tr. 25-26).

During the time period of the events in question, PPL had in place an e-mail and internet policy that restricted use of company e-mail or internet for only business purposes. Specifically, Corporate Policy 405, dated April 11, 2001, states "E-mail is Company property and intended strictly for Company business. When using e-mail... [the user] must adhere to established policies including the Standards of Conduct and Integrity and Diversity in the Workplace." (Corp. Policy 405, at p. 5). The Standards of Conduct and Integrity (presented to employees in a power point presentation) in the section headed "Company Funds, Property" states:

---

[1] Following the lead of the parties in their filings, the Court will use the following abbreviations: (GG Tr.) for Gregory Gorsky's deposition transcript; (JR Tr.) for John Rizzo's deposition transcript; (KG Tr.) for Kim Gorsky's deposition transcript; (GJ Tr.) for George Jones's depositions transcript; (DR Tr.) for Douglas Rehrer's depositions transcript.

Additionally, PPL filed a series of declarations in support of its Motion for Summary Judgment. These declarations are of Douglas Rehrer (Rehrer Decl.), George Jones (Jones Decl.), Andrew K. Williams, Esq. (Williams Decl.), and Daniel R. Halem, Esq. (Halem Decl.).

Use of Company resources, including computers, e-mail or the Internet for other than Company business functions is a violation of Company policy.  This applies at any time (working hours and non-working hours, including lunch).  Inappropriate use of Company time and resources (including ... E-mail...) can result in disciplinary action up to and including termination....  Use of Company computers, E-Mail, and the Internet is monitored to ensure proper use.

(Standards of Conduct and Integrity Policy, at D/Gen 000092).  Additionally, PPL has a Policy on Sexual Harassment which prohibits sexual harassment and defines sexual harassment to include "the display of sexually suggestive objects or pictures, or telling jokes of a sexual nature."  (Policy on Sexual Harassment, at p. 1).

Plaintiffs admit to knowing that the Company e-mail system was intended for Company business use only.  (GG Tr. 37-38, 56-58, 61-62, 70-71; KG Tr. 58-59, 62-64; JR Tr. 32-33, 35, 48-49, 51).  Additionally, Plaintiffs were aware that the Company could monitor their e-mails and Internet usage.  (GG. Tr. 37; KG Tr. 57-58; JR Tr. 49).  Further, Plaintiffs concede that they understood it was a violation of Company's policy to distribute sexually explicit e-mails or e-mails that were derogatory to any groups.  (GG Tr. 16, 62; JR Tr. 39-40; KG Tr. 62-64).  Plaintiffs also admitted to receiving the various policies discussed above and attended a training provided by PPL on these policies.  (GG Tr. 34-35, 75; KG Tr. 48-49, 70-72; JR Tr. 40-41, 169).  Plaintiffs claimed that the Standards of Conduct and Integrity Policy was distributed years prior to the investigation.  However, the deposition testimony of Mr. and Ms. Gorsky show that Mr. Gorsky received the training two years prior to the investigation (not 6 to 8 as asserted by the Plaintiffs in their Reply to the Motion for Summary Judgment), (GG Tr. 34-35) and Ms. Gorsky received the training in 1999 (not 1989 as asserted by the Plaintiffs in their Reply to the Motion for Summary Judgment) (KG Tr. 70).  Further, Plaintiff also stated that Mr. Rizzo "never

4

received training" in the EEO policy, but Mr. Rizzo himself testified that he received this training on May 5, 1999. (JR Tr. 169).

According to Douglas Rehrer, PPL's Manager of Health and Security at the time at issue, PPL followed the Responsible Behavior Program, which provides for five degrees of employee discipline: 1) casual reminder; 2) oral reminder; 3) written reminder; 4) decision making leave; and 5) termination. (Rehrer Decl. ¶ 7). The final decision on what type of punishment to administer is for an employee's manager. (Rehrer Decl. ¶ 7).

In September 2000, Mr. Rehrer was asked to begin an investigation of theft of time at a subsidiary corporation of PPL. (DR Tr. 9-11). This investigation revealed violations of e-mail policy by employees using their company e-mail for personal reasons. (DR Tr. 12). Mr. Rehrer requested and received the authority to investigate the e-mail folders of the 15 employees identified as the violators. (DR Tr. 12-14). Of the fifteen people, seven employees of the subsidiary were determined to have been sending non-business related e-mails. (DR Tr. 14-16, 27-28). This investigation also revealed Mr. Gorsky as one of the abusers of the e-mail system. (DR Tr. 15). The subsidiary, after this investigation was concluded, disciplined the seven employees determined to be violators. (DR Tr. 20).

Mr. Rehrer then requested the right to investigate Mr. Gorsky more fully, along with the other employees of PPL who either sent emails to or received e-mails from Mr. Gorsky. (DR Tr. 28-29). After assembling the complete list of employees who Mr. Gorsky had non-business contact with via e-mail (which totals over 100 employees), the twelve people with the highest number of e-mail activity were investigated further. (DR Tr. 30, 33). This investigation, called Phase One, was later reduced to focusing on 10 employees. (Two of the twelve individuals were

no longer employed at PPL).  (Rehrer Decl. ¶ 13).  All of the Plaintiffs were part of this Phase

One investigation.  (Rehrer Decl. ¶ 14).

The investigation reviewed the e-mail account of the 10 employees, including the

"inbox," "sent" folder, and "delete" folder.  (DR Tr. 30).  Since there had never been a prior e-

mail investigation, no official standards governing how to approach the investigation existed.

(DR Tr. 23).  Mr. Rehrer then decided to divide all e-mails were then divided into two categories:

1) "sexual, ethnic, or racial" and 2) "other improper."  (DR Tr. 24-25).  George Jones, the PPL

Vice President responsible for the Nuclear Department, testified that no official standard as to

what was "improper" existed, so it was a "judgment call" as to what fit into each category.  (GJ

Tr. 31).

This was further divided in a matrix into three sub-categories: 1) those sent by the

employee; 2) those received by the employee; and 3) those stored by the employee.  (DR Tr. 25).

After assembling this information, several factors were considered in determining the severity of

discipline to be recommended to the Vice Presidents: First, "sexual, ethnic, or racial" e-mails

were viewed as a the most serious violation; second, storing the "sexual, ethnic, or racial" e-

mails on a Company computer was the next most serious offense; third, the number of "sexual,

ethnic, or racial" e-mails received was viewed as evidence that the employee did not tell the

sender to stop; and, finally, the volume of the other e-mails was considered.  (DR Tr. 25-26).

However, the volume of e-mails "was not a determining factor."  (GJ Tr. 31-32).

It was then determined that Mr. Gorsky and Mr. Rizzo were the two most egregious

violators of PPL policies (the matrix showing the Phase One investigation findings is attached),

and therefore should be terminated.  (Rehrer Decl. ¶ 21).  It was further recommended that five

employees be given suspensions and three employees (including Ms. Gorsky) be given written warnings.  (Rehrer Decl. ¶ 21).

Mr. Gorsky concedes that his use of e-mail for sexually explicit material was inappropriate and against Company policy.  (GG Tr. 16, 120).  However, Mr. Gorsky, while conceding that some punishment was deserved, alleges that termination was an excessive punishment for his actions.  (GG Tr. 131).  Both Mr. Rehrer and Mr. Jones stated that they believed Mr. Gorsky's role as the prime offender made the decision to terminate him the only appropriate discipline.  (Rehrer Decl. ¶ 24; Jones Decl. ¶ 7-8).

Mr. Rizzo admitted that he was aware of PPL's policies concerning use of e-mail and sexual harassment, and also conceded that his behavior was inappropriate.  (JR Tr. 181-82, 185).  Mr. Rizzo also admitted to being personally offended by some of the e-mails being sent by Mr. Gorsky, and feared that he would get in trouble for receiving these e-mails.  (JR Tr. 91, 95, 123-24, 133-34, 143-44).  Furthermore, Mr. Rizzo concedes that the e-mails he stored on his company computer were "very inappropriate" to store at work.  (JR Tr. 104).  Since Mr. Rizzo was viewed as the second most egregious violator involving "sexual, ethnic" e-mails, behind Mr. Gorsky, Mr. Rehrer and Mr. Jones concluded that termination was the appropriate punishment.  (Rehrer Decl. ¶ 25; Jones Decl. ¶ 7).

Ms. Gorsky was aware that there were e-mail and Internet policies at the Company (KG Tr. 119), but was not aware that there were restrictions on the e-mails that an employee could send and receive.  (KG Tr. 40).  Since Ms. Gorksy had significantly fewer e-mails then the other employees investigated, it was decided by her superiors at PPL that a written warning would suffice.  (Rehrer Decl. ¶ 29; Jones Decl. ¶ 7).  Ms. Gorksy claims she was told the disciplinary

7

letter would be removed from her file after one year.  (KG Tr. 131).  However, Ms. Gorsky requested and received a copy of the letter more than a year later.  (KG Tr. 132).

The final decision on discipline was made by George Jones, with the support of PPL's other Vice Presidents.  (Jones Decl. ¶ 1).  Mr. Jones was 53 years old when he made the decisions.  (Jones Decl. ¶ 10).  Mr. Rehrer was 57 years old when he recommended the discipline that was eventually adopted.  (Rehrer Decl. ¶ 32).

After the Phase One investigation was completed, a Phase Two investigation was conducted regarding the misuse of e-mails.  (Rehrer Decl. ¶ 34).  This investigation resulted in 19 employees receiving discipline.  (Rehrer Decl. ¶ 35).  Another 17 employees were investigated, but not found to have violated the applicable PPL policies.  (Rehrer Decl. ¶ 35).

After his termination, Mr. Gorsky filed a grievance pursuant to the collective bargaining agreement.  (GG Tr. 128).  An arbitrator made a ruling on this matter and found that his actions were "inappropriate and deserving of a serious penalty."  (Arbitrator's Decision at 11).  However, the arbitrator went on to note that, given Mr. Gorsky's exemplary work history, he should be reinstated without back pay but with full seniority.  (Id.).

Mr. Rizzo also filed a complaint regarding his termination with the Department of Labor, alleging that he was terminated for reporting alleged safety violations to PPL.  (JR Tr. 18-20).  Mr. Rizzo's filing was dismissed by an administrative law judge.  (JR Tr. 20, 22).

Mr. Gorsky was replaced on March 31, 2003 by Roy Fisher, who was born June 18, 1952 (Mr. Gorsky was born April 3, 1954 (GG Tr. 5)).  (Jones Decl. ¶ 11).  Prior to that time, Mr. Gorsky's duties were absorbed by existing members of his work group.  (Jones Decl. ¶ 11).  Mr. Rizzo's position was not filled; his duties were absorbed by existing members of his work group.

(Jones Decl. ¶ 11).

Ms. Gorsky filed a grievance regarding her written warning, but the union did not pursue her grievance. (KG Tr. 139, 140-41). Ms. Gorsky applied for an accounting position within PPL after the investigation had begun, but was denied the position. (KG Tr. 29). She had applied for this same position prior to the discipline, with the same result. (KG Tr. 186). During oral arguments, counsel for Ms. Gorsky argued that Ms. Gorsky had received a suspension following this investigation, (Transcripts from Oral Argument on March 7, 2005, at 24 ll. 10-11), but there is absolutely no evidence to support such a statement of fact. Ms. Gorsky also alleged in the Memorandum of Law accompanying the Reply to the Motion for Summary Judgment that her performance reviews went down after the e-mail investigation from "excellent" to "okay." (Pl.'s Mem., at 7, citing KG Tr. 158 (stating that Ms. Gorsky felt the later performance evaluations "just... were [not] written with as much zest as before")). In actuality, Ms. Gorsky conceded in her deposition when confronted with her performance evaluations from 2001 and 2002 that she received the highest possible rating and was pleased with her performance evaluations during this time. (KG Tr. 159-162). In her deposition, Ms. Gorsky states that she "must have been mistaken" about receiving only satisfactory performance evaluations, and explains that this error was caused by her "mood or feeling of being left out." (KG Tr. 162).

Further, PPL asserts that Plaintiffs have misled the Court by claiming that the Standards of Conduct and Integrity Policy were distributed years prior to the investigation. The deposition testimony of Mr. and Ms. Gorsky show that Mr. Gorsky received the training two years prior to the investigation (not 6 to 8 as stated in the Plaintiffs' Reply) (GG Tr. 34-35) and Ms. Gorsky received the training in 1999 (not 1989 as stated in the Plaintiffs' Reply) (KG Tr. 70). Further, it

was also argued on behalf of Plaintiffs that Mr. Rizzo "never received training" in the EEO

policy, but Mr. Rizzo himself testified that he received this training on May 5, 1999 (JR Tr.

169).[2]

All the Plaintiffs filed complaints with the EEOC regarding the alleged age

discrimination.  The EEOC issued determinations in all of these matters that found that probable

cause existed that violations occurred.

The EEOC determination for all of the Plaintiffs is substantially the same.  The EEOC

noted that the e-mail investigation was quite narrow, including only ten people, eight of whom

were in the protected age group and the other two were 38 and 39.  (Kim Gorsky's EEOC

Determination ("KGED"), at 2; Gregory Gorsky's EEOC Determination ("GGED"), at 2; John

Rizzo's EEOC Determination ("JRED"), at 2).  The EEOC further noted that PPL had at least

---

[2] Counsel has previously been urged to take care with the manner in which he presents facts of cases to the Court.  For example, in Helfrich v. Lehigh Valley Hosp., 2005 WL 670299 (E.D. Pa. Mar. 18, 2005), Plaintiffs' counsel in this matter also represented Mr. Helfrich.  The Court noted in footnote 2 of that opinion the importance of not "taking liberty with undisputed facts and objectively reasonable inferences that exist within the record."  In light of counsel again tending to, on the one hand, exaggerate some facts and, on the other hand, obfuscate other facts, the Court will once again refer counsel to cases that clarify the importance of candor to the Court.

See, e.g., LaSalle Nat'l Bank v. First Connecticut Holding Group, LLC, 287 F.3d 279, 293 (3d Cir. 2002) ("As an officer of the court, an attorney must comport himself/herself with integrity and honesty when making representations regarding a matter in litigation. 'An attorney's obligation to the court is one that is unique and must be discharged with candor and with great care. The court and all parties before the court rely upon representations made by counsel. We believe without qualification that an attorney's word is his bond.'") (quoting Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 212 (3d Cir. 1985)); In re Universal Minerals Inc., 755 F.2d 309, 312-13 (3d Cir. 1985) ("Above and beyond the dictates of courtesy, counsel have 'a continuing duty to inform the Court of any development which may conceivably affect an outcome' of the litigation. This is so, even where the new developments, new facts, or recently announced law may be unfavorable to the interests of the litigant") (quoting Fusari v. Steinberg, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring); cf. PA. RULES OF PROF'L CONDUCT, R. 3.3 (candor toward tribunal); Pinkham v. Sara Lee Corp., 983 F.2d 824, 833 (8th Cir. 1992) ("Attorneys, as officers of the court, have the responsibility to present the record with accuracy and candor").

five thousand employees and that PPL did not do a random investigation of all these employees nor did it actually investigate every employee who was found to have inappropriate e-mails. (KGED, at 2; GGED at 2; JRED at 2).  The EEOC also disputed PPL's assertion of the number of inappropriate e-mails sent, received, or stored by each of the Plaintiffs' and that the Plaintiffs violated the Sexual Harassment Policy, Equal Employment Opportunity and Harassment Policy, Electronic Information Security Policy, or the Standards of Conduct and Integrity Policy. (KGED, at 2-3; GGED at 2; JRED at 2).  From these determinations, the EEOC concluded that PPL's decisions "to concentrate its investigation on and discipline only the individuals within or close to the protected age group" was a violation of the ADEA.  (KGED, at 3; GGED, at 3; JRED, at 3).

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  Reviewing the record, the Court is obliged to "resolve all reasonable inferences in [the non-moving party's] favor." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 409 (3d Cir. 1999).  The moving party, here PPL, bear the burden of showing that the record reveals no genuine issue as to any material fact and that they are entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c).  Once the moving party has met its burden, the non-moving parties, here Mr. and Ms. Gorsky and Mr. Rizzo, must go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial.  Id.  However, the parties opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to

the material facts," but must produce *competent evidence* supporting their opposition.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

     To defeat a motion for summary judgment, factual disputes must be both material and genuine.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is material if it is predicated upon facts that are relevant and necessary and that may affect the outcome of the matter pursuant to the underlying law.  Id. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving parties.  Id. at 248-49. Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, because such a failure as to an essential element necessarily renders all other facts immaterial.  Celetox Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Thus, if there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, judgment must be awarded to the moving party.  Anderson, 477 U.S. at 250.

## III.   **DISCUSSION**

     The burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is the appropriate analysis for summary judgment motions in cases alleging age discrimination where there is no direct evidence of discrimination.  Torre v. Casio, Inc. 42 F.3d 825, 829 (3d Cir. 1994).  In order to establish a *prima facie* case of age discrimination, a plaintiff must demonstrate by a preponderance of the evidence that he or she: (1) is at least 40 years of age; (2) was qualified for the position; (c) suffered an adverse employment action; and (d) there is an inference of age discrimination.  Ryder v. Westinghouse Electric Corp., 128 F.3d 128, 136 (3d Cir. 1997).  These elements are not to be construed too strictly, but depend on the facts of the

particular case.  Jones, 198 F.3d at 411.  To show an inference of age discrimination the plaintiff must show that he "lost out because of his age."  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) (holding that the relevant issue is whether the evidence could support a reasonable factfinder's conclusion that a discriminatory animus served as the basis for the employer's decision); Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 355 (3d Cir. 1999).

If the Plaintiffs have established *prima facie* cases, PPL must "articulate a legitimate nondiscriminatory reason for the adverse employment action at issue."  Id. at 412 (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)).  The Plaintiffs then must point "to some evidence, direct or circumstantial, from which a factfinder would reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).[3]

A.    **Adverse Employment Action**

_____PPL argues that Ms. Gorsky does not demonstrate that she suffered from an "adverse employment action."  Adverse employment action is defined as one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives her of employment

---

[3] The Court does take note and wishes to commend Plaintiffs' counsel for bringing to the Court's attention the recent United States Supreme Court case Smith v. City of Jackson, Miss., 2005 WL 711605 (U.S. March 30, 2005), in which the Supreme Court recognized that "disparate impact" claims are recognized under the ADEA.  Disparate impact refers to actions by an employer which are "facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another."  Teamsters v. United States, 431 U.S. 324, 335-336 n.15 (1977).  However, the Court must note that Plaintiffs have not explained in their submission how a disparate impact claim would apply to this case or if Plaintiffs are arguing that PPL's actions disparately impacted employees over 40 years of age.  Because Plaintiffs have not made any motion or request of the Court to take certain action, the Court will not address the merits of any potential "disparate impact" claim.

opportunities, or adversely affects her status as an employee." Robinson v. Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1997). In other words, the alleged adverse employment action must result in a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998). Therefore, a written warning does not constitute an adverse employment action absent a material change in the employee's terms and conditions of employment. Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001).

PPL notes that in Hay v. GMAC Mortgage Corp., 2003 U.S. Dist. LEXIS 16550 (E.D. Pa. Sept. 11, 2003), Judge Gardner concluded that a written warning that was a permanent part of the plaintiff's personnel file was not evidence of an adverse employment action, because the plaintiff failed "to identify any material change in his employment after defendant reprimanded him." Id. at *18-19. Judge Gardner cited to the Weston opinion which had concluded that a written reprimand that remained in the plaintiff's file for six months did not result in a material change in the terms or conditions of employment. Id. (citing Weston, 251 F.3d at 430-31). Similarly, in a non-precedential opinion, the Court of Appeals for the Third Circuit found that verbal and written warnings did not amount to an adverse employment action, where there was no evidence that the plaintiff suffered a material change in her employment. Urey v. Grove City College, 94 Fed. Appx. 79, 81 n.2 (3d Cir. 2004).

PPL further notes that there is no evidence that Ms. Gorsky suffered any change to her employment after receiving the written reprimand. In fact, Ms. Gorsky has conceded that she received positive evaluations in the years following the reprimand. Ms. Gorsky's argument that the reprimand kept her from being offered the accounting position, according to PPL, is specious,

since Ms. Gorsky was not qualified (she has no accounting degree), she has provided no evidence that the decision makers charged with responsibility for filling that position were even aware of her reprimand, and she was first rejected for that position prior to the issuance of her written reprimand.

Ms. Gorsky argues that the written reprimand is a "permanent blemish" on her record that prevented her from getting the accounting position.  Although Ms. Gorsky concedes that no evidence directly links the written reprimand to the decision not to hire her for the accounting position, Ms. Gorsky speculates that the existence of the reprimand was a factor in her not being offered that position.

Ms. Gorsky also argues that two other employees, John Knorr (age 39) and Jeffrey Palmer (age 38), also received written reprimands, but these writings were removed from their files after one year.  Ms. Gorsky argues that this disparate treatment raises an inference that she suffered an adverse employment action and the action was motivated by discrimination.  See Pittman v. Continental Airlines, Inc., 35 F. Supp. 2d 434, 443 (E.D. Pa. 1999) (finding "a female sexual discrimination plaintiff must show that male employees did not suffer similar adverse employment actions, despite displaying the same problem which provoked and supported the adverse action suffered by the plaintiff" to demonstrate a prima facie case).

The Court finds that Ms. Gorsky has not produced any credible evidence that she suffered an adverse employment action.  A written reprimand is, in and of itself, clearly not enough to rise to the level of an "adverse employment action."  While Ms. Gorsky makes some speculations that would imply an adverse employment action, these speculations have no factual basis in the record and cannot be viewed as reasonable inferences from the record.  Therefore, summary

15

judgment is granted in favor of PPL as to Ms. Gorsky's claims for failure to establish a *prima facie* case.

**B.**   **Inference of Age Discrimination**

PPL argues that the Plaintiffs cannot establish that their discipline occurred under circumstances giving rise to an inference of discrimination.  PPL notes that 25 employees who were the same age or older that Mr. Rizzo and Mr. Gorsky either received lesser discipline than they did or no discipline at all after investigation.  Additionally, there is no evidence that age was ever discussed in any of the decisions to discipline.  In fact, the decision makers claim that they did not know the Plaintiffs personally or know their ages when making the decisions.  (Rehrer Decl. ¶ 32; Jones Decl. ¶ 4).  Finally, neither Mr. Rizzo nor Mr. Gorsky were replaced with younger employees.

Plaintiffs argue that terminating older employees with seniority gives rise to an inference of discrimination.  Plaintiffs note that "a court should look at the Plaintiff's entire work history, and not just the limited circumstances involving her termination."  Chisholm v. National Corporation For Housing Partnerships, 2001 WL 115406, at *2 (E.D. Pa. Jan. 31, 2001).  As such, an employer's refusal to consider past good behavior in disciplining or other employment actions may be considered as evidence of discrimination.  See Gunby v. Pennsylvania Electric Company, 840 F.2d 1108, 1117 (3d Cir. 1988) (holding an individuals' past excellent performance and regular promotions is evidence that refusal to further promote a black man was evidence of discrimination).  Plaintiffs also reiterate the point discussed in the adverse employment action that disparate treatment of similarly situated individuals gives an inference of discrimination.

16

PPL notes that an employee's prior job performance has no relevance when the employee was terminated for behavior tangential to his work. Pierce v. New Process Co., 580 F. Supp. 1543, 1546 (W.D. Pa. 1984), aff'd without opinion, 749 F.2d 27 (3d Cir. 1984). As such, PPL argues that Plaintiffs reliance on the Gunby case is entirely misplaced. Finally, past work history was not a factor in any of the individuals disciplined, and companies have the right to make their own determination as to what factors are relevant to discipline. See Kelly v. Drexel University, 94 F.3d 102, 109 (3d Cir. 1996) (holding the "second-guessing" of companies management decisions is unfair without evidence of discriminatory motivations); Thakur v. R.W. Johnson Pharmaceutical Research Institute, 268 F. Supp. 2d 521, 531 (E.D. Pa. 2003) (holding that a court "may not question an employer's basis for terminating an employee unless that basis is rooted in illegal discrimination or otherwise contravenes the law"). Since the Plaintiffs cannot identify for this Court any actually similarly situated employees[4] who were younger and treated more leniently, there is no evidence that shows a discriminatory intent.

The investigation that led to the termination of Mr. Gorsky and Mr. Rizzo was limited to a small group of individuals (around 50 employees out of 4,600) of whom a significant majority were over 40 years old (nearly 80% of the people investigated). PPL has raised several points explaining why this investigation affected predominantly employees in the protected age group, including the demonstrable fact that the average age of PPL employees is 46 years old, (Transcript from Oral Argument on March 7, 2005, at p. 5, l. 4) and the investigation centered around e-mails sent and received by Mr. Gorsky who, naturally, has friends who are of a similar

---

[4] PPL notes that Mr. Gorsky and Mr. Rizzo were determined to be the most egregious violators of the e-mail policy, so no other employee is similarly situated.

age as Mr. Gorsky.  Despite these legitimate explanations, the Court's role is to determine if the plaintiff has raised a genuine issue of material fact that he "lost out because of his age." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996).  Therefore, the question is whether a reasonable factfinder could find that discriminatory animus was the motivation for Mr. Gorsky's and Mr. Rizzo's termination.

The record evidence does raise a genuine issue that Mr. Gorsky and Mr. Rizzo were terminated because of their age.  The investigation of 47 employees at PPL included 37 employees in the protected age group.  Of the ten employees outside the protected age group, five were not disciplined, including the only employees investigated below the age of thirty.  Further, the most severe discipline, termination, was only administered to three individuals, all in the protected age group.  These numbers could certainly be inferred by a reasonable factfinder to show that the investigation and the discipline that followed was motivated by discriminatory animus.  Therefore, the Court finds that there is sufficient evidence to infer age discrimination and Mr. Gorsky and Mr. Rizzo have established a *prima facie* case of age discrimination.  Thus, under the burden shifting analysis of McDonnell Douglas, the inquiry must proceed to the analysis of wether PPL has articulated legitimate, non-discriminatory reasons for the termination of Mr. Gorsky and Mr. Rizzo and, if such reasons exist, whether Mr. Gorsky and Mr. Rizzo can produce sufficient evidence to show these reasons are pretextual.

### C.    **Legitimate, Non-Discriminatory Reasons**

According to PPL, it has provided legitimate, non-discriminatory reasons for the termination of Mr. Gorsky and Mr. Rizzo.  The reasons provided by PPL are that the Plaintiffs misused the Company's e-mail system in violation of known procedures, and this misuse was a

18

drain on the computer system, was evidence of lack of productivity by the employees, and the e-mails contained highly inappropriate material for the workplace that could have exposed PPL to sexual harassment litigation.  Mr. Gorsky and Mr. Rizzo do not dispute that the reasons given are legitimate and non-discriminatory, but argue that the reasons are pretextual.  Therefore, the burden shifts to Mr. Gorsky and Mr. Rizzo to produce sufficient evidence to raise a genuine issue of material fact that the reasons expressed are pretextual.

In order to show the reasons given were pretextual, a plaintiff must produce evidence from which a factfinder could reasonably either: (1) disbelieve the articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions.  Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 143 (2000); Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000).  A plaintiff cannot discredit an employer's reasons merely by showing that the "employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  Instead, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions... that a reasonable factfinder could rationally find them 'unworthy of credence.'"  Id.

In this case, Mr. Gorsky and Mr. Rizzo have failed to produce any evidence that could cause a reasonable factfinder to either disbelieve PPL's articulated reasons for the terminations or believe that a discriminatory reason was more likely than not a motivating or determinative cause of PPL's termination of Mr. Gorsky and Mr. Rizzo.  Both Mr. Gorsky and Mr. Rizzo have conceded that they received, sent, and/or stored e-mails that were inappropriate for the

workplace, that this use of the e-mail system was prohibited under PPL policy, and that they were informed that PPL had the right to discipline employees for misuse of the e-mail. Further, both Mr. Gorsky and Mr. Rizzo conceded that many of the e-mails were of a sexual or otherwise potentially offensive nature and that it was possible other employees would have been offended if they saw the e-mails.

Further, neither Mr. Gorsky nor Mr. Rizzo have produced evidence that age was a factor in any manner in PPL's decisions to terminate their employment. First, they cannot cite to any specific instance where they were told by any member of management that their age was a factor in the decisions. Second, the decisionmakers in this matter have asserted that they did not even know the ages of any of the people investigated when making their decisions. Third, the only basis for alleged age discrimination is the Plaintiffs' own unsubstantiated, subjective beliefs that "no other explanation" is plausible. Fourth, the relevant decisionmakers were themselves in the protected age group. Finally, the evidence shows that 25 employees who were the same age or older than Mr. Gorsky and Mr. Rizzo received lesser or no discipline.

Mr. Gorsky and Mr. Rizzo seem to rely solely on the argument that the methodology of the investigation was too arbitrary and narrow and, therefore, the underlying reason for the terminations must have been discriminatory animus. Specifically, Mr. Gorsky and Mr. Rizzo argue that PPL's failure to use progressive discipline is evidence of pretext.[5] These arguments

---

[5] The cases cited to by Plaintiffs actually state that a failure to follow the procedures of the company, which may include "progressive discipline," is evidence of discrimination. Craig v. Y & Y Snacks, Inc., 721 F.2d 77, 80 (3d Cir. 1983); Sylvester v. Callon Energy Services, Inc., 781 F.2d 520, 525-26 (5th Cir. 1986). However, in this case, there is no evidence presented that PPL had a procedure for progressive discipline at the time of the termination, or that PPL violated any of its procedures in the investigation at issue.

seem to be nothing more than an attempt to second guess the PPL's decision.  At no point has

Mr. Gorsky or Mr. Rizzo actually referred to "weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions" in PPL's reasons that would give a reasonable factfinder a basis

to find PPL's articulated reasons were "unworthy of credence."  <u>Fuentes</u>, 32 F.3d at 764.

Because Mr. Gorsky and Mr. Rizzo have failed to produce evidence that would cause a

reasonable factfinder to disbelieve the reasons stated by PPL or believe that a underlying motive

was discrimination, the Court finds that summary judgment is appropriate as to the claims of Mr.

Gorsky and Mr. Rizzo.

## D.   <u>EEOC Determination</u>

The Court also wishes to address the issue of the EEOC Determinations in the matters of

Ms. Gorsky, Mr. Gorsky, and Mr. Rizzo.  In all of these cases, the EEOC determined that

probable cause existed for an age discrimination claim.  If these determinations were found by

the Court to be competent evidence, they would raise a genuine issue of material fact and

summary judgment would be inappropriate.  On the other hand, if the Court finds the EEOC

determinations to not be competent evidence for any reason, they would not be part of the

summary judgment analysis.  The admissibility of EEOC determinations is up to the sound

discretion of the trial court, <u>Starceski v. Westinghouse Elec. Corp.</u>, 54 F.3d 1089, 1100 (3d Cir.

1995), and the Court here finds in the context of these cases that the EEOC determinations are

not competent evidence.

As Plaintiffs conceded during oral argument, if the Court finds the EEOC determination

is not supported by the record, it is not competent evidence.  <u>See</u> <u>Coleman v. Home Depot, Inc.</u>,

306 F.3d 1333, 1341-42 (holding that an agency determination that is not "trustworthy" is

inadmissible).  In this case, the EEOC determinations are filled with findings inconsistent with

the actual record.  The EEOC significantly understated the quantity of inappropriate e-mails

involved by ignoring the e-mails received and stored by the Plaintiffs.  The EEOC also misstated

the policies of PPL, which clearly prohibited all non-work use of the e-mail system, by claiming

PPL's policy only prohibited e-mails that violated "state or federal law."  Finally, the EEOC

focused heavily on the so-called narrow nature of the investigation, but this fact alone cannot be

the basis of a finding of discriminatory motive.

     The Court finds that the EEOC Determinations in these matters to be too untrustworthy to

be considered as competent evidence.  Besides the concerns expressed above about the accuracy

of the findings of the EEOC, the Court also takes note of the undisputed contentions of PPL's

counsel, Andrew K. Williams, that the EEOC investigator admittedly refused to do a thorough

investigation, but simply required that PPL take part in a settlement conference at the risk she

would produce a determination favorable to the Plaintiffs if no settlement conference was

conducted.  Because the Court finds the EEOC Determinations to be untrustworthy on their face,

the Court will not further address this alleged behavior of the EEOC investigator.

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, the Court grants the Defendant's Motion for Summary

Judgment.  An appropriate Order to be entered in each of the captioned cases consistent with this

Memorandum follows.

BY THE COURT:

<u>/S/</u>_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN S. RIZZO, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PPL SERVICE CORPORATION, | : | |
| Defendant | : | NO. 03-5779 |

## O R D E R

Gene E.K. Pratter, J.                                                          April 19, 2005

AND NOW, this 19th day of April, 2005, upon consideration of Defendant PPL Service

Corporation's ("PPL") Motion for Summary Judgment (Docket No. 22) and the accompanying

Exhibits and Declarations, the Plaintiffs' Memorandum in Opposition to the Motion (Docket No.

28) and the accompanying material, PPL's Reply Memorandum of Law (Docket No. 31), the

Plaintiffs' Supplemental Memorandum of Law to cite New Authority (Docket No. 36), the letter

sent by PPL's counsel on April 11, 2005, and the representations of counsel at oral argument on

March 7, 2005, it is hereby ORDERED that the Motion for Summary Judgment (Docket No. 22)

is GRANTED.

It is further ORDERED that the Clerk of the Court is directed that this matter is CLOSED

for statistical purposes.

BY THE COURT:

/S/_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE